[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12814

_____

D. C. Docket No. 03-00790-CV-J-25-TEM


WACHOVIA BANK, N.A., as Trustee of the
George C. Nunamann Trust,

                                        Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

                                        Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 13, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

CARNES, Circuit Judge:

The Beatles' taxman told us what we'd see:

"There's one for you, nineteen for me."[1]

But if we really want some funds to free,

how soon does asking have to be?

Doggerel aside, the issue presented in this case is whether the statute of limitations period set forth in 26 U.S.C. § 6511(a) applies to claims for refunds made by those who have mistakenly filed a return and paid tax when they were not actually required to file a tax return. And as the Beatles probably would have guessed, the lamentable answer is yes.

## I.

Wachovia Bank is the trustee for the George C. Nunamann Trust, which was created in 1984. Since 1991, when it was reformed in order to meet the requirements of 26 U.S.C. § 664(c), the trust has qualified as a charitable remainder trust that is exempt from federal income tax. Having qualified for that status, the trust has not been not obligated since 1991 to file a fiduciary income tax return or to pay income tax, but only to file an information return. Unfortunately, Wachovia failed to recognize the trust's tax exempt status after its reformation,

---

[1] The Beatles, Taxman, on Revolver (EMI Records Ltd. 1966).

and filed income tax returns for and continued to pay taxes out of the trust for the 1991 through 2001 tax years.

Having belatedly realized its mistake, on May 7, 2003 Wachovia filed with the IRS amended Forms 1041 requesting a refund of the taxes inadvertently paid on behalf of the trust for the 1997 and 1998 tax years. In a letter dated August 12, 2003, the IRS denied those refund claims, which totaled $111,823. The denial letter explained that the claims for a refund as to those tax years were barred by the three-year statute of limitations set forth in 26 U.S.C. § 6511(a). Soon after, Wachovia filed this lawsuit in the district court seeking the amount it had paid by mistake for the 1997 and 1998 tax years.

The parties filed cross-motions for summary judgment. The government contended that Wachovia's suit was time-barred because it had not filed an administrative claim for a refund within the time limits established by § 6511(a). Wachovia did not dispute that it had filed its claims for refunds after the § 6511 time limit had expired. Instead, Wachovia contended that § 6511 did not apply to its refund claims because it was never required to file a tax return for the trust to begin with. Wachovia's position was that only the general six-year statute of limitations, outside the Tax Code, the one set forth in 28 U.S.C. § 2401(a), applied to its refund claim. The district court found merit in Wachovia's position, and

concluded that the three-year limitations period in § 6511 applies only to taxpayers who are required to file tax returns. Based on that reasoning, it granted Wachovia's motion for summary judgment. The government appeals.

## II.

Section 6511(a), titled "Limitations on credit or refund," sets forth the limitations period for tax refund claims:

> Period of limitation on filing claim.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for the credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

26 U.S.C. § 6511(a).

A tax payment may constitute an "overpayment" even when no tax liability exists. The Tax Code provides:

> Rule where no tax liability.—An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

4

26 U.S.C. § 6401(c) (emphasis added). The double negative in that provision means that even if one never owed tax in the first place but paid tax anyway, the mistaken payment constitutes an overpayment. See id. The sensible idea, somewhat obscured in the Tax Code speak of that provision, is that because anything is more than nothing, any payment is an overpayment when no payment was due.

A district court has jurisdiction to entertain civil actions against the government "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). The section of the Tax Code which governs civil actions for a refund, 26 U.S.C. § 7422(a), states that before a taxpayer can file suit against the government to recover tax that he alleges the IRS has "in any manner wrongfully collected," he must "duly" file an administrative claim for refund "according to the provisions of law in that regard" and in accordance with the relevant regulations. 26 U.S.C. § 7422(a). If the requirements of § 7422(a) are not met, a court has no subject matter jurisdiction to hear the claim for refund. See id.

A general statute of limitations (outside of the Tax Code), titled "Time for commencing action against United States," applies to suits against the federal government and provides that "every civil action commenced against the United

States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. This case requires us to interpret those statutes.

Wachovia's position here, as in the district court, is that the six-year general § 2401 limitations period applies but the tax-specific § 6511(a) three-year limitations period does not. That has to be its position, because Wachovia concedes that the claims for refund it filed with the IRS for the 1997 and 1998 tax years came more than three years after it had filed the returns for those years (and also more than two years after it had paid taxes for them). If § 6511(a) applies, Wachovia loses.

Wachovia's argument against the application of § 6511(a) is simple. It focuses on these thirteen words of the statutory language: "in respect of which tax the taxpayer is required to file a return." 26 U.S.C. § 6511(a). Wachovia contends that the plain meaning of that language is that § 6511(a) applies only to taxpayers who are required to file a return, and that the reference in that language to "the taxpayer" means to the specific refund claimant only, not taxpayers generically. If that argument is correct, Wachovia wins because everyone agrees the trust was not required to file a tax return.

The government's position is that § 6511(a) should not be read in isolation but instead in conjunction with § 7422 and also with a Treasury Regulation, 26 C.F.R. § 301.6511(a)-1, which relates to § 6511(a). That regulation provides:

> (a) In the case of <u>any</u> tax (other than a tax payable by stamp):
>
> (1) If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later.
>
> (2) If no return is filed, the claim for credit or refund of an overpayment must be filed by the taxpayer within 2 years from the time the tax was paid.
>
> (b) In the case of any tax payable by means of a stamp, a claim for credit or refund of an overpayment of such tax must be filed by the taxpayer within 3 years from the time the tax was paid.

26 C.F.R. § 301.6511(a)-1(a)–(b) (emphasis added).

The government contends that 26 U.S.C. § 6511(a) and 26 C.F.R. § 301.6511(a)-1 cover the universe of claims for refunds and divide that universe into two categories. The first category of refund claims is defined in the opening sentence of § 6511(a), as well as by subsection (a) of the regulation, and it includes any tax that is payable by return instead of stamp. The second category is defined by the second sentence of § 6511(a), as well as by subsection (b) of the

7

regulation, and it includes any tax that is payable by stamp instead of return. No taxes fall through the cracks of § 6511(a) and the regulation, because every tax is payable either by return or stamp. Under this reading no tax refunds are governed by the non-Tax Code general statute of limitations contained in 28 U.S.C. § 2401. In other words, either a tax is payable by stamp or it is not, and if it is not, a claim for refund of an overpayment must be made within three years from the time the return was filed. See 26 U.S.C. § 6511(a).

If the government's reading of § 6511(a) and the regulation is correct, then Wachovia loses. It loses because the three-year statute of limitations contained in § 6511(a) applies to its effort to secure an income tax refund, and Wachovia waited more than three years to begin that effort.

The government attacks Wachovia's reliance on "the taxpayer" language in § 6511(a) by asserting that that phrase refers to the taxpayer generally, generically, and non-case specifically. Although the government does not put it this way, its argument is that "the taxpayer" is to "taxpayer" as "the citizen" is to "citizen." When we say that "the citizen" has certain rights and responsibilities, we are not necessarily talking about the one, single citizen who happens to be before the court, but we could—depending on context—be talking about citizens in general, generically, and non-case specifically. The context here, the argument goes, is the

8

one provided by § 6511(a), which is nestled in the Tax Code, and which sets forth a statute of limitations provision intended to describe the universe of taxes by the two categories through which taxes are paid. What is not clear enough in § 6511(a) is made plenty clear in 26 C.F.R. § 301.6511(a)-1(a)–(b). The government also argues that Wachovia's interpretation of § 6511(a) would undermine one of the principal policies and benefits of a statute of limitations, which is to foreclose litigation of the merits of late-filed claims. Wachovia's interpretation would require that the merits be decided because only then would we know if the claimant was a taxpayer required to file a return and therefore was one to whom § 6511(a) applies.

As far as tax cases go, this is an interesting issue. Although it is one of first impression with us, the First Circuit has decided it in Little People's School, Inc. v. United States, 842 F.2d 570, 571 (1st Cir. 1988). That case involved a school which, as a non-profit corporation, was exempt from federal income and unemployment taxes, but mistakenly filed returns paying them for tax years 1978–81. Id. at 571. Its refund claims were filed in 1985. After the IRS concluded that the claims were time-barred by § 6511(a), the school filed a lawsuit. Id. That case turned on the same language from § 6511(a) that this one

does—the language describing refunds of taxes "in respect of which tax the taxpayer is required to file a return."

The First Circuit rejected the school's contention that the quoted language from § 6511(a) covered only those taxpayers who were actually required to file a return for the tax that they had overpaid. Id. at 573. The court acknowledged that "[d]oubtless, the most 'natural' meaning of the first sentence of section 6511(a), read in isolation, is the one urged upon us by the Little People's School," but explained that "the provision can also be read as the government urges, and that reading is far more plausible in light of the rest of the Tax Code." Id.

The First Circuit pointed to § 7422(a), which made the proper filing of an administrative refund claim a condition precedent to bringing a lawsuit for a refund. Id. It noted that the school's interpretation of § 6511(a) would result in there being no administrative limitations period whatsoever for refund claims filed where no return had been required. Id. at 573–74. That, as the court explained, "makes little sense" because Congress would not have "enacted a statute mandating the filing of an administrative claim as a prerequisite to a civil action while at the same time intending the only statute of limitations relating to administrative claims to exempt a certain class of these claims from its coverage." Id. at 574. The court concluded that "[t]he most reasonable way to harmonize

10

section 6511(a) with section 7422(a) is to interpret the disputed phrase in section 6511(a)'s first sentence as applying to all taxes payable by return, reading the provision's reference to 'the taxpayer' as a reference to a generic taxpayer (i.e., 'a taxpayer'), and not to the particular taxpayer seeking a refund in a particular instance." Id. at 574.

The First Circuit also adopted the government's policy argument, as the following passage from its opinion shows:

> It would indeed be a perverse statute of limitations that would operate in accordance with the school's favored interpretation of section 6511(a), that is, by requiring the decisionmaker (either a district court or the IRS) to determine whether a taxpayer was required to file a return in order to determine whether the taxpayer was covered by section 6511(a)'s limitations period. The government aptly points out that such an inquiry often implicates the claim's merits.

Id. Finally, the court noted that the legislative history and corresponding Treasury Regulation for § 6511(a) supported the government's position but that it need not rely on them to reach its decision. Id. at 574 n.3. Because the claims had not been filed within the three-year period specified in § 6511(a), the court held that the district court lacked jurisdiction to entertain them. Id. at 574–75.

Wachovia tries to warn us away from the First Circuit's reasoning in Little People's School by characterizing it as a results-oriented analysis that strays from

the established principles of statutory construction. Wachovia urges upon us instead the reasoning that the Sixth Circuit applied in interpreting a different Tax Code provision in State of Michigan v. United States, 141 F.3d 662 (6th Cir. 1998). That decision, however, did not even involve § 6511(a), and the opinion merely commented that Little People's School's interpretation of § 6511(a) in relation to § 7422(a) was "strained." Id. at 665. The Sixth Circuit acknowledged that "neither [§6511(a) nor §7422(a)] is implicated in the present matter," id., which means that its criticism of the decision in Little People's School is dicta. We might have more confidence in that criticism if the court that uttered it had been required by the facts of its case to struggle with the same question and the implications of its views, as the court that decided Little People's School had to do. See, e.g., McDonald's Corp. v. Robertson, 147 F.3d 1301, 1315 (11th Cir. 1998) (Carnes, J., concurring) (explaining why dicta is less reliable and entitled to less weight than a holding). And as we have to do. We turn now to that task.

Well-established and soundly based rules of statutory construction require us to consider the provisions of § 6511(a), and its language, in context. The Supreme Court has described statutory construction as "a holistic endeavor." Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60, 125 S. Ct. 460, 466–67 (2004) (citations and quotation marks omitted). In doing so, the Court explained:

12

"A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." Id. at 60, 125 S. Ct. at 467.

The Supreme Court has also warned us against slicing a single word from a sentence, mounting it on a definitional slide, and putting it under a microscope in an attempt to discern the meaning of an entire statutory provision:

> The definition of words in isolation . . . is not necessarily controlling in statutory construction.  A word in a statute may or may not extend to the outer limits of its definitional possibilities.  Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

Dolan v. U. S. Postal Serv., 546 U.S. ___, 126 S. Ct. 1252, 1257 (2006). Characteristically, Holmes put it best when he explained in another tax case about ninety years ago that, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425, 38 S. Ct.158, 159 (1918).

This is not the first time that we have heeded the instruction that context is

king. In one decision, we put it this way:

> As a reviewing court, we should not restrict ourselves to examining a particular statutory provision in isolation when determining whether Congress has specifically addressed the question at issue. The meaning, or lack thereof, of certain words or phrases may only come to light when placed in the appropriate context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.

In re Int'l Admin. Servs., Inc., 408 F.3d 689, 708 n.7 (11th Cir. 2005) (citations

and quotation marks omitted); see also United States v. Rigel Ships Agencies, Inc.,

432 F.3d 1282, 1288 (11th Cir. 2005) ("In any question of statutory interpretation,

we do not look at one word or term in isolation, but instead we look to the entire

statutory context.") (quoting United States v. DBB, Inc., 180 F.3d 1277, 1281

(11th Cir. 1999)) (quotation marks and alterations omitted); Nyaga v. Ashcroft,

323 F.3d 906, 914 (11th Cir. 2003) ("It is a fundamental canon of statutory

construction that the words of a statute must be read in their context and with a

view to their place in the overall statutory scheme.") (quoting Davis v. Mich.

Dep't of Treas., 489 U.S. 803, 809, 109 S. Ct. 1500, 1504 (1989)) (quotation

marks omitted).

The first step of statutory construction is to determine whether the language of the statute, when considered in context, is plain. Bautista v. Star Cruises, 396 F.3d 1289, 1295 (11th Cir. 2005) (explaining that "the first step is to determine whether the statutory language has a plain and unambiguous meaning by referring to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole") (quotation marks and citation omitted). If the meaning of the statutory language in context is plain, we go no further. United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149 (1992)) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said."). But in order "to determine 'the plain meaning of the statute'" we must consider both "the 'particular statutory language at issue'" and "'the language and design of the statute as a whole.'" Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1278 (11th Cir. 2005) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S. Ct. 1811, 1818 (1988)).

Returning to the language of § 6511(a), the term "the taxpayer" could refer to a particular taxpayer, the one who filed the refund claim; or it could refer more generally and generically to taxpayers in a non-case specific sense, to refund

15

claimants where income, gift, or estate taxes are involved because those are taxes for which "the taxpayer is required to file a return." The term, in other words, could refer to the non-government side of the tax relationship when a type of tax for which a return is involved is being paid or has been paid.

Since it plausibly could mean either of two things, the term "the taxpayer" in § 6511(a) is ambiguous. For that reason, we look to the "remainder of the statutory scheme"—the rest of the Tax Code—and conclude that interpreting "the taxpayer" in § 6511(a) as referring to the generic taxpayer "produces a substantive effect that is compatible with the rest of the law." See Koons, 543 U.S. at 60, 125 S. Ct. at 467. If we read the term "the taxpayer" as it appears in section 6511(a) in isolation, we might reach a different conclusion. See Little People's School, 842 F.2d at 573. However, we do not read words or strings of them in isolation. We read them in context. We try to make them and their near and far kin make sense together, have them singing on the same note, as harmoniously as possible. See Towne, 245 U.S. at 425, 38 S. Ct. at 159. And reading "the taxpayer" as a reference to taxpayers generally makes more sense in light of the rest of the Tax Code, producing a more harmonious result. See Little People's School, 842 F.2d at 574. In interpreting 28 U.S.C. § 1346(a)(1), which confers jurisdiction on a district court to entertain civil actions against the government "for the recovery of

16

any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," the Supreme Court has explained that the scope of § 1346(a)(1) is limited by other provisions of the Tax Code. United States v. Dalm, 494 U.S. 596, 601, 110 S. Ct. 1361, 1364 (1990). The Court has stated that § 7422(a) provides that an administrative claim must be duly filed before a taxpayer has the right to bring a refund suit, and § 6511(a) sets a limitations period on a taxpayer's right to bring that suit. Id. at 601–02, 110 S. Ct. at 1364–65. These two provisions must be read in relation to one another, and they work together to limit the jurisdiction of courts to hear refund claims. See id. ("Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court.").

The Supreme Court in Dalm also recognized the primary purpose behind § 6511(a)'s three-year limitations period, one which strongly supports the applicability of § 6511(a) in the present case. The Court explained that "[t]he very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious." Id. at 610 n.7, 110 S. Ct. at 1369 n.7.

We do not "lift the statutory bar" simply because a taxpayer learns too late that her taxes were "paid in error" or that "she has a ground upon which to claim a refund." Id.

Determining whether a particular taxpayer is required to file a return often involves in inquiry into the merits of a refund claim. If we adopted Wachovia's position, no one could know whether the § 6511(a) statute of limitations provision applied to a claim until the merits of the claim were decided. First would come the decision on the merits, then would come the decision on whether a decision on the merits was barred. To switch the order of decision around like that would make as little sense as having the issue of whether a runner is disqualified from competing in a race depend on whether he wins it.

Because Wachovia failed to file its claims for a refund for the 1997 and 1998 tax years within the three-year limitations period set forth in 26 U.S.C. § 6511(a), the district court was barred by 26 U.S.C. § 7422(a) from exercising any jurisdiction over those claims. For that reason, we reverse the district court's decision and remand with instructions to dismiss the complaint for lack of subject matter jurisdiction.

**REVERSED** and **REMANDED** with instructions to **DISMISS**.